# Supreme Court of Florida

_____

No. SC09-2358
_____

**ROBERTO BASULTO, et al.,**
Petitioners,

vs.

**HIALEAH AUTOMOTIVE, etc., et al.,**
Respondents.

[March 20, 2014]

PERRY, J.

Roberto Basulto and Raquel Gonzalez, a married couple, seek review of the decision of the Third District Court of Appeal in Hialeah Auto., LLC v. Basulto, 22 So. 3d 586 (Fla. 3d DCA 2009), on the ground that it expressly and directly conflicts with a decision of this Court, Seifert v. U.S. Home Corp., 750 So. 2d 633 (Fla. 1999), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that we explain below, we quash the Third District's decision based on its conflict with our controlling precedent.

## I. BACKGROUND AND FACTS

The pertinent facts that led to the civil action that commenced in the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, are taken from the decision on review.

In 2004, Roberto Basulto and Raquel Gonzalez, who are husband and wife ("the buyers"), purchased a new 2005 Dodge Caravan from Hialeah Automotive, LLC, which does business as Potamkin Dodge ("the [dealership]"). The buyers alleged that while at the dealership, the dealer had the buyers sign the contract in blank, with the representation that the agreed-upon numbers would be filled in. The buyers alleged that when the dealership completed the sales contract, it allowed them a lower trade-in allowance than the amount agreed upon. The dealer refused to correct the situation. After negotiations proved unsuccessful, the buyers returned the van to the dealership (having driven a total of seven miles) and demanded the return of their trade-in. The trade-in had been sold.

The buyers brought suit alleging fraud in the inducement and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). See Ch. 501, pt. II, Fla. Stat. (2004). The buyers also sought rescission of the arbitration agreements they had signed, and rescission of the loan agreement.

The dealer moved to compel arbitration. The trial court held an evidentiary hearing at which the buyers and representatives of the dealer testified.

Basulto, 22 So. 3d at 588.

During the evidentiary hearing, the buyers independently testified, with the assistance of a court-approved interpreter, that they (1) emigrated from Cuba in December 1997, and (2) were only able to communicate in Spanish. All of the documents pertaining to the civil action between the buyers and the dealership were drafted in English.

The trial court heard testimony from multiple witnesses, including the dealership's employees who were directly involved in the automobile purchase deal with the buyers. After the evidentiary hearing, the trial court entered an "Order Denying [the dealership's] Amended Motion to Dismiss and/or to Compel Arbitration." See Basulto v. Hialeah Auto., LLC (Order), No. 05-05556 CA09 (Fla. 11th Cir. Ct. Mar. 8, 2007). The trial court made the following pertinent findings of fact:

> 3. It is undisputed that at least two of the documents which [the buyers] were called upon to sign contained arbitration clauses. . . . [E]ven if the documents had been printed in Spanish, a reasonable person reading these documents would not have a clear understanding of the precise terms and conditions to which they were called upon to agree.
> 4. Although [the dealership]'s sales representative and finance and insurance manager both testified that at the time the [buyers] signed the subject documents, these employees explained "arbitration" to the [buyers], further testimony by these employees clearly established that (a) the sales representative had no basic understanding of the concept of arbitration . . . and (b) the finance and insurance manager did not convey to the [buyers] that arbitration deprived [buyers] of their rights to seek punitive damages or class action status.
> 5. [The buyers], on the other hand, testified that they had never been informed concerning arbitration and . . . were never put on notice that they were being called on to waive valuable rights, much less to ask important questions regarding what rights they were waiving. Any waiver was a blind and unknowing waiver.
> 6. . . . [The dealership's] finance manager also testified that if the [buyers] had refused to sign, they would not have had a deal. [The buyers] also testified that they were hurried/rushed when signing the many documents that they could not read and were told to sign, sign, sign in rapid succession.

Order at 2-3.

The trial court entered conclusions of law that relied on the framework set forth in Seifert for evaluating motions to compel arbitration. The trial court stated:

> The parties in this case have stipulated that no waiver of the right to arbitrate has occurred.
> The Court concludes as a matter of law that no valid agreement to arbitrate exists in this case. This conclusion is based on the Court's finding of fact that the various jury waiver and arbitration clauses which [the buyers] were required to sign were conflicting in their essential provisions and, taken together, provided for three separate and distinct means of dispute resolution. One of the clauses at issue provided for jury waiver and (presumably) trial in a court of law. Another provision required arbitration by a single arbitrator. Another provision required arbitration by a panel of three arbitrators. In addition the methods for selecting arbitrators were conflicting as well as what law or procedure would govern the arbitration proceeding. Each of the competing dispute resolution provisions at issue contemplates the enforcement of a different remedy whose terms and conditions are irreconcilable with the terms and conditions of each of the other conflicting provisions. This Court accordingly concludes as a matter of law that there was no meeting of the minds with respect to the terms by which the [the dealership] intended the parties to be bound. There is accordingly no valid agreement for this Court to enforce.

Id. at 4-5 (emphasis added).

The trial court further concluded that even if the arbitration provisions could be construed as agreed upon by the parties, the provisions are unenforceable because they are procedurally and substantively unconscionable.

The dealership appealed the trial court's nonfinal order. The Third District rendered a decision that affirmed in part, and reversed in part, the trial court's judgment. Basulto, 22 So. 3d at 592. The Third District noted:

Although by no means an exclusive list, the Fourth District has identified two analytical frameworks that have been used by courts "when confronted with this issue [a challenge to the validity of an arbitration agreement]: (1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable." By the phrase "defeats the remedial purpose of the applicable statute," the Fonte [v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005)] court referred to an arbitration clause that eliminates substantive rights guaranteed by a remedial statute. The trial court applied both approaches in this case.

Id. at 589 (citations omitted). The Third District further noted:

Under either analysis, procedural unconscionability was established. . . . The trial court found that the Agreement was substantively unconscionable because it contained a waiver of the right to seek punitive damages. . . . We agree with the trial court that it is unconscionable to employ an arbitration agreement to obtain a waiver of rights to which the signatory would otherwise be entitled under common law or statutory law.

Id. at 590 (citation omitted).

We observe that the district court designated the "Agreement to Arbitrate Disputes," a single-page document, as "the Agreement." Second, the district court designated the arbitration provision on the reverse side of the "Retail Installment Contract," as "the Clause."[1] Regarding the disputed arbitration provisions, the Third District noted:

_____

1. We also observe that the trial court considered and ruled that none of three purported arbitration agreements were valid: (1) the Agreement, (2) the Clause, and (3) an untitled provision within the dealership's order form. The third purported arbitration provision appears at the bottom of the dealership's order form, and it does not include the term "arbitrate(ion)." It contains certain

- 5 -

The trial court found that the Agreement was substantively unconscionable because it contained a waiver of the right to seek punitive damages. The complaint contains a claim for fraud, and punitive damages are available in judicial proceedings where there is a fraud claim. We agree with the trial court that it is unconscionable to employ an arbitration agreement to obtain a waiver of rights to which the signatory would otherwise be entitled under common law or statutory law.

Id. (citations omitted). The dealership asserted in its appeal below that the severability clauses should enable the purported arbitration agreements to survive after severing any unenforceable terms. The Third District disagreed as to one of the arbitration provisions, determining that "the severability clause does not apply here, and the Agreement operates in a substantively unconscionable way. We therefore affirm the order denying enforcement of the Agreement." Id. at 591.

However, the Third District had a different view regarding another arbitration provision:

With regard to the Clause, we affirm the trial court's order insofar as it declined to enforce arbitration of the claims for declaratory and injunctive relief. We reverse the trial court's order insofar as it declined to enforce the Clause with respect to the buyers' claims for monetary relief.

Id. at 592 (emphasis added).

---

boilerplate language that is associable with agreements to arbitrate—e.g., "Florida shall have exclusive jurisdiction," "venue shall lie exclusively in Miami-Dade County, Florida," and "trial by jury is irrevocably waived."

In the analysis that follows, we explain why we disagree with the Third District's Basulto decision. The decision on review is quashed and remanded with instructions to reinstate the trial court's judgment. First, we determine that the Third District neglected to employ the standard we established in Seifert to evaluate a motion to compel arbitration according to a purported agreement. Next, we determine that although the Federal Arbitration Act (FAA) was implicated by the parties' agreement for the automobile purchase, the trial court's finding that no arbitration agreements existed negates any conclusion that the FAA requires that motion to compel arbitration should have been granted. Next, we explain that, under Florida law, both the procedural and substantive prongs of unconscionability must be established as an affirmative defense to prevent the enforcement of an arbitration agreement. However, these prongs need not be present to the same degree. Finally, we determine that the buyers are entitled to reasonable appellate attorney's fees.

## II. ANALYSIS

### A. Jurisdiction

We have granted discretionary review under our jurisdiction to consider express and direct conflict of decisions, see art V, § 3(b)(3), Fla. Const., because the Third District's decision in Basulto has created misapplication conflict with our decision in Seifert. See generally Ascensio v. State, 497 So. 2d 640, 641 (Fla.

- 7 -

1986) ("Based on the conflict created by [the] misapplication of law, we have jurisdiction under article V, section 3(b)(3), Florida Constitution."); State v. Stacey, 482 So. 2d 1350, 1351 (Fla. 1985) (exercising jurisdiction because the district court "misapplied controlling case law to the facts of the case").

In its decision below, the Third District misapplied the unconscionability standard in spite of the trial court's explicit ruling denying the dealership's motion to dismiss and/or compel arbitration. The cause on appeal before the Third District required an application of the Seifert standard. In Seifert, we previously provided guidance for evaluating motions to compel arbitration agreements. See Seifert, 750 So. 2d at 636 ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived."). In denying the dealership's motion to compel arbitration, the trial court concluded "as a matter of law that no valid agreement to arbitrate exists in this case," which relates to the first prong of the Seifert standard. However, the Third District neglected to perform a Seifert analysis in making its decision on review. Accordingly, we determine that the Third District's Basulto decision misapplied the Seifert standard, which governs the evaluation of motions to compel arbitration agreements in Florida courts.

## B.  Standard of Review

Because both the trial court and the Third District decided the present issues as a matter of law, our review of the <u>Basulto</u> decision is de novo.  <u>Aravena v. Miami-Dade County</u>, 928 So. 2d 1163, 1166 (Fla. 2006).

## C.  The Purported Agreements
## 1.  The District Court's Decision to Reverse

The trial court, relying on the <u>Seifert</u> standard, denied the dealership's motion to compel arbitration.  Nevertheless, the Third District reversed the trial court's order, in part; requiring the buyers and the dealership to proceed to arbitration under the Clause.  The Third District failed to perform a <u>Seifert</u> analysis in making its decision, and did not provide any explanatory reasoning.  In general, if there is no showing for each of the elements set forth in <u>Seifert</u>, the motion to compel arbitration must be denied.  In this case, the record shows that the trial court had legally sufficient grounds under the first prong of the <u>Seifert</u> standard to deny the dealership's motion to compel arbitration when it found that no arbitration agreements between these parties existed.  <u>See</u> <u>Seifert</u>, 750 So. 2d at 636.  The trial court further concluded that even if any arbitration agreement existed between the buyers and the dealership, it was unenforceable due to procedural and substantive unconscionability.  The trial court specifically found that the buyers were unable to understand any of the purported arbitration agreement documents.  Furthermore, none of the dealership's employees involved

in the deal with the buyers could explain arbitration as an alternative dispute remedy in an understandable way.

The buyers argue that under the circumstances of the case presented on appeal, the Third District's analysis should have addressed the Seifert standard. We agree.

The Third District's decision reversing, in part, the trial court's judgment pertaining to the Clause does not conform to our controlling precedent governing disputed motions to compel arbitration set forth in Seifert. Contrary to the trial court's finding, the Third District determined that the Clause was a valid arbitration agreement entered into under the FAA, and was enforceable on a limited basis. The Clause states in pertinent part: "This contract evidences a transaction involving interstate commerce. Any arbitration under this contract shall be governed by the Federal Arbitration Act . . . ." The Third District states the following pertinent points concerning its decision:

> Where, as here, the parties execute an arbitration agreement in a transaction involving interstate commerce, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, is implicated.
> Parties are allowed to choose state law for "the rules under which . . . arbitration will be conducted." By their Florida choice of law, the parties have specified the procedures of the Florida Arbitration Code as being applicable to this transaction. See Ch. 682, Fla. Stat. (2004). While this is permissible, the arbitration agreements in this case must still be enforced in a way which is consistent with the substantive provisions of the FAA.
> Under the FAA, an arbitration agreement in a transaction involving interstate commerce "shall be valid, irrevocable, and

- 10 -

> enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 prohibits the states from placing greater restrictions on arbitration clauses than those that apply to other contract provisions." "A court must enforce an arbitration agreement according to its terms, absent an established ground for setting aside the contractual provision, such as fraud, duress, coercion, or unconscionability."

Basulto, 22 So. 3d at 589 (internal citations omitted; omission in original). In Basulto, the Third District aptly observes that the FAA was implicated. Accordingly, we now examine the specific requirements for entertaining disputed arbitration agreements governed by this federal statute.

## 2. Enforcing Arbitration Agreements Governed by the Federal Arbitration Act

We acknowledge that neither of the parties has challenged the validity the Retail Installment Contract, which contains the Clause. And because of the subordinate nature of the Clause to the Retail Installment Contract, we preliminarily evaluate the Clause in light of Prima Paint Corp. v. Flood & Conklin Manufacturing Co. (Prima Paint Corp.), 388 U.S. 395 (1967), in which the United States Supreme Court addressed an arbitration agreement that was a provision within a larger agreement between corporations.

In Prima Paint Corp., the United States Supreme Court granted certiorari review to consider a claim under the United States Arbitration Act (the Act) pursuant to diversity jurisdiction—a dispute between a New Jersey corporation

(Flood & Conklin), and a Maryland corporation (Prima Paint). Id. at 396-97.

Prima Paint filed a complaint in the federal district court (Southern District of New York) seeking rescission of its consulting agreement with Franklin & Conklin claiming fraudulent inducement; Prima Paint also sought an order enjoining Franklin & Conklin from proceeding to arbitration. Id. at 398-99. Franklin & Conklin cross-moved to stay the complaint pending arbitration. Id. at 399. The district court decided for Franklin & Conklin concluding that "a charge of fraud in the inducement of a contract containing an arbitration clause as broad as this one was a question for the arbitrators, not for the court." Id. Prima Paint appealed. Id. The Second Circuit Court of Appeals dismissed the appeal holding that the federal district court's judgment was based on controlling precedent. Id. at 399-400. The Supreme Court affirmed the federal circuit court's decision, but it provided slightly different reasons for rendering its decision. Id. at 400. The Supreme Court based its decision on the plain language meaning within sections 2, 3, and 4 of the Act:

> The key statutory provisions are [sections] 2, 3, and 4 of the United States Arbitration Act of 1925. Section 2 provides that a written provision for arbitration 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Section 3 requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. Section 4 provides a federal remedy for a party 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

> agreement for arbitration,' and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored.

Id. (footnotes omitted).

The Supreme Court concluded that Congress explicitly provided under section 4 of the Act "the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' " Id. at 403. Thus, Prima Paint Corp. requires a judicial order compelling arbitration when there are no issues found with the making of a valid agreement to arbitrate governed by the Act.

However, in this review, we see that the trial court's order reflects that there were substantial issues in the making of the purported arbitration agreements between the buyers and the dealership. The trial court specifically found that the buyers and the dealership had not, in fact, agreed to any of the arbitration terms in dispute.

The trial court's findings that no arbitration agreement exists between the buyers and the dealership negate any conclusion that the Third District properly applied the proposition set forth in Prima Paint Corp. The Third District's decision that the Clause is enforceable to compel arbitration of the buyers' claims for monetary relief is contrary to section 4 of the FAA. The federal statute requires that the trial court be "satisfied that the making of the agreement for arbitration or

- 13 -

the failure to comply therewith is not in issue" to grant a petition (motion) for an

order directing the parties to proceed with arbitration.[2]  9 U.S.C. § 4.

_____

2.  The applicable provision of the federal statute (Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination) states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  Five days' notice in writing of such application shall be served upon the party in default.  Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure.  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.  If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.  If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall

make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4 (2000).

The Florida Arbitration Code has a comparable provision as was identified in Prima Paint Corp. in section 4 of the Act. The statute—Proceedings to compel and stay arbitration— provides:

A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.

§ 682.03(1), Fla. Stat. (2004). We also note that effective July 1, 2013, the Florida Legislature revised section 682.03. The statute provides in pertinent part:

(1) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
(a) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate.
(b) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
(2) On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate.
(3) If the court finds that there is no enforceable agreement to arbitrate, it may not order the parties to arbitrate pursuant to subsection (1) or subsection (2). . . .

- 15 -

The Third District never evaluated the threshold requirement that the trial court be "satisfied with the making of the agreement for arbitration" under the terms of the Clause. The trial court's finding that the Clause stands as a non-existent agreement with respect to these parties should have been addressed on appeal below. The FAA empowered the trial court to decide whether any agreement existed if, as the record in this case reflects, the buyers did not demand a jury trial. See 9 U.S.C. § 4 (2000) ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue."). The trial court's judgment that no arbitration agreements, governed by the FAA, existed is dispositive as to whether we should quash the Basulto decision on review as misapplying the Seifert standard.

### 3. Trial Court's Findings that No Arbitration Agreement Exists

A trial court's findings of fact are presumptively correct unless clearly erroneous. See Tobin v. Michigan Mut. Ins. Co., 948 So. 2d 692, 696 (Fla. 2006) ("On appeal, '[t]he findings of a trial court are presumptively correct and must

§ 682.03, Fla. Stat. (2013).

stand unless clearly erroneous.' ") (quoting Chiles v. State Empl. Attorneys Guild, 734 So. 2d 1030, 1034 (Fla. 1999)).

The trial court's findings in this the record show that: (1) the buyers could not communicate in English; (2) the documents that they signed were in English; (3) some of the documents were blank when signed by the buyers, and pertinent information was filled in after the fact; (4) the dealership's employees who presented the terms of the deal to the buyers in Spanish, did not have any basic understanding about the nature of arbitration; (5) there is no evidence that anyone explained the potential valuable rights the buyers were waiving by purportedly entering into the three separate agreements; and (6) the trial court found that "[e]ach of the competing dispute resolution provisions at issue contemplates the enforcement of a different remedy whose terms and conditions are irreconcilable with the terms and conditions of each of the other conflicting provisions." Thus, we see nothing in this record showing that the trial court's findings of fact that no valid arbitration agreements existed are clearly erroneous.

Moreover, pursuant to the first prong of the Seifert elemental analysis, the trial court's legal conclusion that no valid arbitration agreement exists was a proper basis to deny the motion to compel arbitration between the buyers and the dealership. The dealership argues that valid arbitration agreements were made with the buyers, and that it should not matter, under Florida's law of contracts, if a

party is blind, illiterate, or has limited understanding of the language. The

dealership further argues that none of the referenced party-specific limitations

work to invalidate the present arbitration agreement. We reject the dealership's

arguments.

The record supports the trial court's conclusion that there was no "meeting

of minds" between the buyers and the dealership, which constituted the making of

an enforceable arbitration agreement. See generally Pepple v. Rogers, 140 So.

205, 208 (Fla. 1932) ("The general rule is that in order for a misrepresentation to

be a ground for rescission and cancellation, it must be with reference to some

material fact or thing, unknown to the complainant, either from his not having

examined, or for want of opportunity to be informed, or from his entire confidence

reposed in the defendant . . . ."). Our precedent confirms that any of the parties'

disputed agreements to arbitrate are actually contractual issues, which are subject

to existing Florida law of contracts. See Seifert, 750 So. 2d at 636 (stating

arbitration provisions are contractual in nature and, therefore, subject to contract

interpretation); see also Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle

Homeowners Ass'n, Inc., 102 So. 3d 722, 728 (Fla. 4th DCA 2012) (quoting

Seifert). In its decision, the Third District also recognized that arbitration

agreements are subject to this state's law of contracts:

> Thus, an arbitration clause can be defeated by any defense existing
> under the state law of contracts. As the [Supreme] Court explained in

[Doctor's Associates, Inc. v.] Casarotto, [517 U.S. 681 (1996)],
"generally applicable contract defenses, such as fraud, duress or
unconscionability, may be applied to invalidate arbitration agreements
without contravening [the Federal Arbitration Act]." 517 U.S. at 687,
116 S.Ct. 1652[.]

Basulto, 22 So. 3d at 589 (quoting Powertel, Inc. v. Bexley, 743 So. 2d 570, 574

(Fla. 1st DCA 1999)).

We disagree with the Third District's conclusion that the buyers' claims for

monetary relief are enforceable under the Clause. Because the buyers have not

agreed to the arbitration terms within the Clause, they cannot be compelled to

arbitrate their claims for monetary relief. See Seifert, 750 So. 2d at 636 ("[N]o

party may be forced to submit a dispute to arbitration that the party did not intend

and agree to arbitrate."). We, therefore, conclude that the Third District's decision

concerning enforcement of the Clause is erroneous.

Because there was no basis for reversing the trial court's nonfinal order, we

also determine that the buyers are the prevailing parties in this cause. And, for the

reasons addressed, we quash the decision on review.

### D. Procedural and Substantive Unconscionability

Even though the issue of whether the purported arbitration agreements are

unconscionable is beyond the scope of whether the decision on review conflicts

with Seifert, such discussion is nevertheless addressable under our discretionary

authority. See generally Savona v. Prudential Ins. Co. of Am., 648 So. 2d 705, 707

- 19 -

(Fla. 1995) ("We have held that we have the authority to consider issues other than those upon which jurisdiction is based, but this authority is discretionary and should be exercised only when these other issues have been properly briefed and argued, and are dispositive of the case."); Savoie v. State, 422 So. 2d 308, 310 (Fla. 1982) ("[O]nce we accept jurisdiction over a cause in order to resolve a legal issue in conflict, we may, in our discretion, consider other issues properly raised and argued before this Court.").

Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain "an unjust and undeserved advantage which it would be inequitable to permit him to enforce." Steinhardt v. Rudolph, 422 So. 2d 884, 889 (Fla. 3d DCA 1982) (quoting Peacock Hotel, Inc. v. Shipman, 138 So. 44, 46 (Fla. 1931)). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Williams v. Walker-Thomas Furniture Co., 350 F. 2d 445, 449 (D.C. Cir. 1965) (emphasis added). The absence of meaningful choice when entering into the contract is often referred to as procedural unconscionability, which "relates to the manner in which the contract

- 20 -

was entered,"[3] and the unreasonableness of the terms is often referred to as substantive unconscionability, which "focuses on the agreement itself."[4] Powertel, 743 So. 2d at 574.

The Third District affirmed the trial court's secondary judgment that the Agreement is unenforceable due to procedural and substantive unconscionability. Basulto, 22 So. 3d at 591. In so doing, the Third District provided analysis

---

3. "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." Powertel, 743 So. 2d at 574. The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract. Kohl v. Bay Colony Club Condo., Inc., 398 So. 2d 865, 868-69 (Fla. 4th DCA 1981). When determining whether a contract is procedurally unconscionable, Florida courts consider the following:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

Pendergast v. Sprint Nextel Corp., , 592 F.3d 1119, 1135 (11th Cir. 2010) (citing Murphy v. Courtesy Ford, LLC, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006); Powertel, 743 So. 2d at 574).

4. Substantive unconscionability focuses on whether the terms are "unreasonably favorable" to the other party and "whether the terms of the contract are so unfair that enforcement should be withheld." Walker-Thomas Furniture, 350 F.2d at 449-50. In other words, the reviewing court asks whether the more powerful party overreached and "gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce." Steinhardt, 422 So. 2d at 889 (quoting Peacock Hotel, 138 So. at 46).

explaining why it decided the Agreement was procedurally and substantively

unconscionable.  Id. at 590-91.  The Third District also determined that the buyers'

prayer for declaratory and injunctive relief was not within the scope of the Clause.

Id. at 592.  However, the Third District reversed the trial court's order to the extent

it "declined to enforce the Clause with respect to the buyers' claims for monetary

relief."  Id.

The Third District's analysis evaluated whether the purported arbitration

agreements were subject to the buyers' defenses to contract enforcement.[5]

However, we conclude that the district court's "extra-Seifert" analysis was neither

necessary, nor proper in light of the finding by the trial court that no agreement to

arbitrate existed.  Accordingly, we do not comment on whether any of the subject

arbitration provisions in this case are unconscionable.

Nevertheless, we take this occasion to address unconscionability in the

general context of defenses to enforcement of arbitration agreements—which are

contractual in nature.  We have previously held that "[a]greements to arbitrate are

treated differently from statutes compelling arbitration."  Global Travel Mktg., Inc.

---

5. The Third District's discussion about the Florida Deceptive and Unfair
Trade Practices Act (FDUTPA), see ch. 501, Fla. Stat. (2004), was part of its
analysis of the Clause.  Basulto, 22 So. 3d at 588, 591-92.  We have determined
that the defenses to contract enforcement analysis, including unconscionability,
should not have been applied in the appeal below.  Accordingly, we find no need to
discuss the issue of whether the purported arbitration agreements are contrary to
the public policy embodied in FDUTPA.

v. Shea, 908 So. 2d 392, 398 (Fla. 2005) ("The difference arises because the rights of access to courts and trial by jury may be contractually relinquished, subject to defenses to contract enforcement including voidness for violation of the law or public policy, unconscionability, or lack of consideration.").

Therefore, when a litigant seeks to avoid enforcement of a requirement to proceed with arbitration, pursuant to the parties' prior agreement, the challenging party must establish that the arbitration agreement is both procedurally and substantively unconscionable. The buyers assert that neither Seifert nor the Florida Arbitration Code requires that in order to avoid compulsion to proceed with the terms of an arbitration agreement, procedural and substantive unconscionability must be established. Notwithstanding the buyers' position on this issue, there is ample support in existing case law requiring that both prongs of unconscionability must be established by a proper showing. All of the district courts of appeal in this state have previously recognized that, under Florida contracts law, both procedural and substantive unconscionability must be established as a defense to contract enforcement. See, e.g., Estate of Perez v. Life Care Ctrs. of Am., Inc., 23 So. 3d 741, 742 (Fla. 5th DCA 2009) (citing Murphy); Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630, 632 (Fla. 2d DCA 2008) (citing Bland, ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 256 (Fla. 2d DCA 2006)); Murphy, 944 So. 2d at 1134 (Third District) ("To invalidate a contract under

Florida law, a court must find that the contract is both procedurally and substantively unconscionable.") (citing Powertel, 743 So. 2d at 574); Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005) (citing Powertel, and Kohl, 398 So. 2d at 867); Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) (citing Powertel, et seq.).[6]

We agree with our district courts of appeal that procedural and substantive unconscionability must be established to avoid enforcement of the terms within an arbitration agreement. However, we conclude that while both elements must be present, they need not be present to the same degree. This balancing, or sliding scale, approach, which we adopt, is considered to be the prevailing view in Florida:

> The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

---

6. We note that the Eleventh Circuit Court of Appeals, interpreting Florida law of contracts, has drawn the same conclusion about the unconscionability defense to contract enforcement as have our state appellate courts. See, e.g., Pendergast, 592 F.3d at 1134 (citations omitted).

- 24 -

Romano ex rel. Romano v. Manor Care, Inc., 861 So. 2d 59, 62 (Fla. 4th DCA 2003) (internal quotation marks and citations omitted) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 690 (Cal. 2000)); see also Steinhardt, 422 So. 2d at 889 ("[M]ost courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability." (quoting Kohl, 398 So. 2d at 868)).

Under this approach, "a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong." VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc., 912 So. 2d 34, 39 (Fla. 4th DCA 2005).

Other Florida courts, reject the balancing, or sliding scale, approach and assess procedural and substantive elements independently, concluding the analysis if either element is lacking. See, e.g., Nat'l Fin. Servs., LLC v. Mahan, 19 So. 3d 1134, 1136 (Fla. 3d DCA 2009) ("Because the arbitration provisions in this case suffered from no procedural malady, we do not reach the question of substantive unconscionability.") abrogated on other grounds by Shotts v. Op Winter Haven, Inc., 86 So. 3d 456 (Fla. 2011); Bland, 927 So. 2d at 257 ("This court, however, eschews the 'sliding scale' approach. Rather we assess procedural unconscionability and substantive unconscionability independently.").

We conclude that the better approach—more in keeping with the pronouncement of this Court on unconscionability over eighty years ago in Peacock Hotel—is the balancing, or sliding scale, approach. This approach recognizes that although the concept of unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined.

The 1931 Peacock Hotel decision, one of the original pronouncements on the subject in Florida, demonstrates that this Court has never viewed unconscionability as being comprised of two separate and independent components:

> It seems to be established by the authorities that where it is perfectly plain to the court that one party [to a contract] has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness.

Peacock Hotel, 138 So. at 46.

Certainly, the original pronouncement of this doctrine from our Court and the modern enunciation from Walker-Thomas Furniture, 350 F.2d at 449, do not view unconscionability as a rigid construct composed of two separate, unrelated elements. Rather, as explained in Walker-Thomas:

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together

- 26 -

with contract terms which are <u>unreasonably favorable to the other party</u>. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. <u>In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld.</u>

<u>Id.</u> at 449 (emphasis added) (footnotes omitted).

When analyzing unconscionability, courts must bear in mind the bargaining power of the parties involved and the interplay between procedural and substantive unconscionability. In the typical case of consumer adhesion contracts, where there is virtually no bargaining between the parties, the commercial enterprise or business responsible for drafting the contract is in a position to unilaterally create one-sided terms that are oppressive to the consumer, the party lacking bargaining power. On the other hand, if two sophisticated commercial enterprises or businesses negotiate a contract where both sides are on equal footing, absent some high degree of procedural unconscionability (such as a party "hiding the ball"), the

chance that the terms of the contract are unduly oppressive is lessened given the circumstances of the contract formation.

Given that the doctrine of unconscionability is not a rigid construct where the procedural aspects are separate from the substantive aspects, we conclude that both the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements.

### E. Attorney's Fees

The buyers have moved for an award of reasonable attorney's fees in accordance with section 501.2105(1) of the FDUTPA. In addition, the buyers assert that they are entitled to reasonable attorney's fees because the Retail Installment Sales Contract contains a provision entitling the dealership to recover attorney's fees, and section 57.105(7), Florida Statutes (2009) applies to permit the court to allow reasonable attorney's fees to the buyers, if they prevail in this action.

In this case, the buyers have timely filed a motion pursuant to Florida Rule of Appellate Procedure 9.400(b), and they assert FDUTPA as one statutory basis for an award of attorney's fees. See § 501.2105(1), Fla. Stat. (2004) ("In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court

and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

We disagree with the buyers, in part, and determine that section 501.2105 of the FDUTPA, is not a valid statutory basis for an award for reasonable appellate attorney's fees in this case. Conversely, we agree with the buyers, in part, determining that section 57.105, Florida Statutes, is applicable in this case for an award of reasonable appellate attorney's fees. Our latter determination is based on the buyer's reference to a provision in the Retail Installment Contract—that is not within the Clause.[7]  See § 57.105(7), Fla. Stat. (2009) ("If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.") (Emphasis added.)

We have stated above that the buyers are the prevailing party in the cause before us. Therefore, pursuant to section 57.105(7), the buyers are entitled to an award of reasonable appellate attorney's fees. Accordingly, we direct that this issue should be remanded to the trial court for a determination of the proper

---

7. Neither party has challenged the validity of the Retail Installment Contract.

attorney's fees to be awarded.  See generally Fla. R. App. P. 9.400(b) ("The assessment of attorneys' fees may be remanded to the lower tribunal.  If attorneys' fees are assessed by the court, the lower tribunal may enforce the payment.").

## III.  CONCLUSION

We quash the Third District's decision on review because it conflicts with our controlling precedent set forth in Seifert.  Accordingly, we remand this cause to the Third District with instructions to order the full restoration of the circuit court's March 8, 2007, nonfinal order.  Upon reinstatement of its order that was the subject of this review, the trial court should appropriately address our decision that the buyers be awarded reasonable appellate attorney's fees.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
POLSTON, C.J., dissents with an opinion in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.


Polston, C.J., dissenting.

At the heart of this dispute is whether an agreement to arbitrate was ever concluded, which is a different issue from whether an agreement to arbitrate is valid.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1 (2006) (reversing this Court and explaining that "[t]he issue of the contract's

validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded").

After conducting an evidentiary hearing, the trial court ruled that there was not a meeting of minds on arbitration (i.e., no agreement to arbitrate was ever concluded), and "accordingly no valid agreement for this Court to enforce." On appeal, the Third District Court of Appeal did not address this ruling by the trial court and completely sidestepped it. Instead, the Third District ruled that the stand-alone "Agreement to Arbitrate Disputes" is unenforceable because it is unconscionable. Hialeah Auto., LLC v. Basulto, 22 So. 3d 586, 591 (Fla. 3d DCA 2009). Then, on rehearing, the Third District remanded to the trial court on an issue regarding the arbitration clause contained in the "Retail Installment Contract" and stated that "[t]he buyers are free on remand to request a ruling . . . that there was no agreement to arbitrate." Id. at 593.

The majority finds conflict between the Third District's opinion and Seifert v. U.S. Home Corp., 750 So. 2d 633 (Fla. 1999), explaining that the Third District did not apply the requirement outlined in Seifert that courts must consider "whether a valid written agreement to arbitrate exists" when ruling upon motions to compel arbitration. See majority op. at 8. However, in Seifert, this Court addressed the scope of the arbitration agreement at issue, not whether an agreement to arbitrate was ever concluded. In fact, Seifert was a wrongful death action, and

the question addressed by this Court was whether the arbitration provision in a contract for the sale and purchase of a house required that wrongful death action to be arbitrated. 750 So. 2d at 635. Further, unconscionability (which was a primary focus of the Third District's opinion) was not at issue in any way in Seifert.

Accordingly, there is no conflict between the Third District's opinion and Seifert, and the Court should not be reviewing this case. Because there is no jurisdiction, I do not reach the merits of the case. I respectfully dissent.

CANADY, J., concurs.


Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Third District – Case No. 3D07-855

(Miami-Dade County)

Timothy Carl Blake, Miami, Florida,

for Petitioners

Mark A. Goldstein, Miami, Florida,

for Respondents