# Third District Court of Appeal

## State of Florida

Opinion filed November 10, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D19-1893, 3D20-752, 3D20-292
Lower Tribunal No. 18-27792

_____

**12550 Biscayne Condominium Association, Inc.,**
Appellant,

vs.

**NRD Investments, LLC., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Waldman Barnett, P.L., and Glen H. Waldman and Michael A. Sayre, for appellant.

Shubin & Bass, P.A., and John K. Shubin, Juan J. Farach and Mark E. Grafton, for appellees.

Before SCALES, HENDON, and MILLER, JJ.

HENDON, J.

12550 Biscayne Condominium Association, Inc. (the "Association") appeals from two orders granting summary judgment in favor of NRD Investments, LLC ("NRD"), and NR Investments 2, Inc. (collectively, "Appellees"), and against the Association. We affirm.

Facts

The Association is a commercial condominium association organized pursuant to Chapter 718, Florida Statutes. Its members own units within commercial office property (the "Office Condominium") located at 12550 Biscayne Boulevard in the City of North Miami. That building was constructed in 1972 and originally used as leased office space. In 2006, NRD[1] purchased the building and converted it to a commercial condominium form of ownership. NRD also owns an adjacent three-story parking garage (the "Parking Garage") on a separate parcel from the Office Condominium. The Parking Garage is specifically identified in all documentation as separate from the Office Condominium. NRD publicly recorded a "Declaration of Covenants, Restrictions and Reciprocal Easement Agreement" (the "REA"), and in that

---

[1] Appellee NR Investments 2 is an affiliate of NRD and is the owner of Unit CU-105 within the Office Condominium. Ron Gottesmann, Nir Shoshani, and Terry Wellons (collectively, "Individual Appellees"), comprise the executive management team for NRD and were also the initial members of the Association's board of directors.

document reserved and retained certain air rights, roof rights, and easements necessary to maintain and operate the existing telecommunication antennas on the roof of the Office Condominium. NR Investments 2 possesses rights to the "Rooftop Limited Common Elements," defined as being appurtenant to Unit CU-105, as expressly set forth in the Declaration of Condominium.[2]

Regarding the Parking Garage, the REA states, "Declarant [NRD] desires to make available to the [Office] Condominium, including the Unit Owners, and their tenants, and their respective employees, guests and invitees, certain parking facilities and easement rights," within the adjacent parking garage while, "retaining the right, at its sole option, to further modify, develop and improve the Easement Parcel [the Parking Garage] . . . subject to the terms and conditions set forth in this Declaration." The REA further provided that NRD, as the Easement Parcel Owner,

> shall have the right, in its sole discretion, to grant, temporary or permanent, licenses (each a "Parking License") to Units to use designated or undesignated Parking Spaces located in the Parking Facilities, and it shall be entitled to receive, and to retain, for its sole use and benefit, all compensation paid in exchange for such Parking Licenses.

---

[2] The Declaration of Condominium further states that "[t]he condominium is within a larger parcel that is subject to the Reciprocal Easement Agreement. Each Unit Owner and its Unit will be subject to all of the terms and conditions of the Reciprocal Easement Agreement, as amended and/or supplemented from time to time."

Near the end of 2018, after every unit purchaser was afforded the opportunity to purchase a license for a designated parking space in the Parking Garage, NRD offered the remaining parking licenses to unit owners who wanted additional spaces.[3]

The Dispute

In 2018, the Association sought to reform or eliminate select provisions of the REA by claiming that it is "one-sided," "oppressive," and "unconscionable" as parking for clients and guests became difficult because of the limited number of spaces on the unassigned first floor of the Parking Garage. Further, the Association sought to remove the telecommunication antennas that it claimed were improperly located on condominium property for over a decade, and asserted entitlement to recover the past lease revenues generated from the antennas. The Association took issue with the reservations in the REA and Declaration that included NRD's ability to profit from the condominium building Parking Garage, while burdening the Association with the obligations to pay the costs of the garage (i.e., maintenance, insurance, taxes, etc.) as well as to profit from antenna revenues.

---

[3] The Parking Garage has three levels. The record indicates that guests and visitors have always been permitted to park in unassigned parking spaces on the first floor. Access to the second and third floors is restricted by a gate, and is reserved for authorized Unit Owners, their designees and employees.

The Association amended its initial complaint twice. The Second Amended Complaint asserted fifteen counts against NRD, six of which are at issue here, as follows: 1) count 1, declaratory relief regarding the nature of the Association's rights and obligations under the REA, including judicial rewrite of certain terms of the REA; 2) count III, a claim for unjust enrichment regarding the Parking Garage revenues and a trial on damages, plus interest and costs; 3) count VI, injunctive relief to require NRD to make all parking equally available to owners, tenants, guests, and business invitees, and to prevent NRD from selling any more parking spaces; 4) count VII, injunctive relief to prevent NRD from installing and leasing any telecommunication antennas on the common elements of the condominium building, and requiring NRD to remove all existing cellular and other telecommunication antennas from the building or to assign all related contracts to the Association; 5) count VIII, a claim for unjust enrichment for NRD leasing the telecommunication antennas on the roof of the condominium building without sharing the revenues with the Association; and 6) count IX, declaratory relief regarding NRD's retention of antenna revenues without sharing the revenues with the Association.

The trial court disposed of these six claims with two partial summary judgment orders. The first order, entered on September 4, 2019, granted partial summary judgment on counts I, III, and VI in favor of NRD on the Association's

parking issues.[4] The second order was entered on January 9, 2020, granting partial summary judgment in favor of NRD on the antenna issues raised in counts VII, VIII, and IX.[5]  The Association appeals.[6]

Standard of Review

The standard of review of a trial court's ruling on a summary judgment motion is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000); Matheson v. Miami-Dade Cnty., 187 So. 3d 221, 225 (Fla. 3d DCA 2015).

Discussion

The Association first argues that the trial court erred by granting summary judgment  in favor of NRD before the Association's discovery was complete, and by disallowing further discovery to defend against NRD's motion for summary judgment.   The Association's claims are unsupported by the record. The record indicates that during the time between the filing of the Association's complaint, NRD's answer, filing of interrogatories, and prior to

---

[4] The subject of appeal in 3D19-1893.

[5] The subject of appeal in 3D20-292.

[6] The Association's remaining nine counts, not at issue here, were also the subject of partial summary judgment orders subsequently issued in favor of NRD, and the Individual Appellees (3D20-752). The orders on appeal in the instant case became ripe for appeal on April 28, 2020. Case numbers 3D20-0752, 3D19-1893, and 3D20-0292, were consolidated for all appellate purposes under case no. 3D19-1893.

the hearing on NRD's motion for summary judgment, the Association failed to identify the specific discovery it wanted, as well as its availability and materiality. The Association did not file any motions to compel depositions or move for a continuance to obtain additional discovery prior to or after the hearing on the motion for summary judgment.  When asked by the court what specific depositions the Association felt were necessary given the purely legal issues to be resolved on the motion, the Association's counsel generally indicated "everybody." Even if the Association's arguments at the summary judgment hearing can somehow be construed as a request for continuance, "[t]he granting or denying of a motion for continuance is within the discretion of the trial judge and a gross or flagrant abuse of this discretion must be demonstrated by the complaining party before this court will substitute its judgment for that of the trial judge." Stern v. Four Freedoms Nat'l Med. Servs., Co., 417 So. 2d 1085, 1086 (Fla. 3d DCA 1982).

The Association next argues that It was error to grant summary judgment on the Association's declaratory judgment claims because NRD's allegedly unconscionable reservation of rights under the REA and the Declaration cannot be decided on summary judgment.  We disagree.

The determination of unconscionability is an issue of law. Belcher v. Kier, 558 So. 2d 1039, 1040 (Fla. 2d DCA 1990); Garrett v. Janiewski, 480 So. 2d

7

1324, 1327 (Fla. 4th DCA 1985) (holding that "the question of unconscionability is one of law for the court"). To prevail on a claim that a contractual provision is unconscionable, a party must establish both procedural and substantive unconscionability. Basulto v. Hialeah Auto., 141 So. 3d 1145, 1148 (Fla. 2014); Hobby Lobby Stores, Inc. v. Cole, 287 So. 3d 1272, 1275 (Fla. 5th DCA 2020). Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand disputed contract terms. Basulto, 141 So. 3d at 1157; Prieto v. Healthcare & Ret. Corp. of Am., 919 So. 2d 531, 533 (Fla. 3d DCA 2005) (holding the procedural component involves the circumstances surrounding the entering of the contract, and thus the court focuses on whether the parties had a reasonable opportunity to understand the terms of the contract and had a meaningful choice in accepting it); Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630, 632 (Fla. 2d DCA 2008). Here, both parties are sophisticated commercial entities presumed to be aware of the facts prior to contracting with each other.

Substantive unconscionability requires an assessment of whether the contract terms are "so 'outrageously unfair' as to 'shock the judicial conscience.'" Id. (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 285 (Fla. 1st DCA 2003)). A substantively unconscionable contract is

8

one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Id. (quoting Hume v. United States, 132 U.S. 406, 411, 415 (1889)); see also SHEDDF2-FL3, LLC v. Penthouse S., LLC, 314 So. 3d 403, 409 (Fla. 3d DCA 2020). Although a party challenging the contract must establish both procedural and substantive unconscionability, both do not have to be present to the same degree. Basulto, 141 So. 3d at 1158-59. Instead, the court can use a "sliding scale" approach when both procedural and substantive unconscionability are present to some degree. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable, and vice versa. Id., 141 So. 2d at 1159.

On de novo review, we conclude that the REA and the Declaration are neither procedurally nor substantively unconscionable. The commercial Association members purchased their condominium units with the ability, as sophisticated businesspeople, to understand the terms in the publicly recorded REA and the Declaration which govern the parking and antenna easements. Provisions in an association declaration are clothed with a "very strong presumption of validity" and will "not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right." See Grove Isle Ass'n Inc. v.

9

<u>Grove Isle Assocs., LLLP</u>, 137 So. 3d 1081, 1091 (Fla. 3d DCA 2014) ("Restrictions which may be found in a declaration of condominium are clothed with a very strong presumption of validity when challenged. This presumption arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed."). The Association further argues that the REA and the Declaration contain terms that cannot be found in similar condominium arrangements. This is, however, not evidence that the terms are legally unconscionable.[7]

The Association next asserts that it should have benefited from a statutory presumption of unconscionability as provided by section 718.122, Florida Statutes, entitled "Unconscionability of certain leases; rebuttable presumption," which provides that a lease of recreational or other common

---

[7] <u>See also</u>, § 8:1. In general, 1 Law of Condominium Operations § 8:1:

> In order to receive a continuing financial benefit from the condominium, even after transition is complete, the developer often reserves certain rights in the condominium property, contracts and services. Common methods of reserving rights to the developer, which often resulted in disputes with unit purchasers, include the execution of recreational leases, management contracts and cable television service contracts. <u>Other methods of reserving developer rights include the temporary or permanent grant or reservation of certain easements</u>.

(footnotes omitted) (emphasis added).

facilities located on the real property, for use by condominium owners, is presumptively unconscionable if the unit owners are required to pay insurance, maintenance, taxes, etc. Because the REA requires that the Association pay the taxes, insurance, and maintenance for the Parking Garage, the Association argues it should have benefitted from a presumption of unconscionability and that this is a contested fact precluding summary judgment. The record on appeal indicates that section 718.122 was briefly mentioned but not argued or explained in the Association's response in opposition to NRD's motion for summary judgment, or during the summary judgment hearing. Merely referring to an authority without expressly arguing to the lower court the principle that flows from it is inadequate to preserve the issue for review if the argument was not considered by the trial court. See Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985) ("[i]n order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved."); Sunset Harbour Condo. Assoc. v. Robbins, 914 So. 2d 925, 928 (Fla. 2005) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that

presentation if it is to be considered preserved."). Thus, the Association's argument relating to section 718.122 was not preserved for appellate review.[8]

Furthering its unconscionability argument, the Association asserts that section 718.302, Florida Statutes (2021), entitled, "Agreements entered into by the association," can be the basis for a declaratory judgment that the terms of the REA and the Declaration are unconscionable. The purpose of a declaratory judgment is to "afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." People's Tr. Ins. Co. v. Franco, 305 So. 3d 579, 582 (Fla. 3d DCA 2020) (quoting Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1192 (Fla.1995)). The allegations in the second amended complaint are not suitable for declaratory judgment because, in addition to seeking what amounts to an advisory opinion, the Association seeks to have the court rewrite certain express rights and obligations set forth in the publicly recorded REA.[9] On de

---

[8] We note also that section 718.122 pertains to leases of recreational or other common facilities located on the subject real property, not publicly recorded easements and condominium declarations.

[9] See 2000 Condo. Ass'n Inc. v. Residences at Sloan's Curve, Inc., 513 So. 2d 1324, 1325 (Fla. 4th DCA 1987) ("Standard real estate easements recorded in the public records by the developer, referred to in the declaration and prior to any unit sales, are not cancellable by a later formed association under Section 718.302, which statutory provision is clearly only directed toward contracts for vending machines, management and the like.").

novo review of the declaratory relief claims, we conclude summary judgment was proper.

The Association next argues that summary judgment on its unjust enrichment claims against NRD was improvidently granted. Florida courts have held, however, that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter. Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007); Kovtan v. Frederiksen, 449 So. 2d 1 (Fla. 2d DCA 1984); see Sterling Breeze Owners' Ass'n, Inc. v. New Sterling Resorts, LLC, 255 So. 3d 434, 437 (Fla. 1st DCA 2018) (holding an unjust enrichment claim cannot prevail because a contract prescribes the parties' rights and responsibilities for such expenses). Thus, because the REA and the Declaration specifically cover the parking and antenna easement and revenue issues, summary judgment on the claims of unjust enrichment was proper.

Finally, the Association proposes that there is a material issue as to whether the antennas are on NRD's Rooftop Limited Common Elements or the Association's Common Elements (i.e., exterior walls). Since the building was built in 1972, and at the time NRD purchased it in 2006, antennas have existed on the roof (or otherwise) of the building in the same location that the

Association challenges for the first time through Count IX.  Where the express terms of the Declaration and REA (both recorded in 2007) set forth clear and unambiguous rights and reservations that permit NRD to maintain and operate the antennas, summary judgment was appropriately granted.

We find the Association's remaining arguments to be without merit.

Affirmed.