# Third District Court of Appeal

## State of Florida

Opinion filed August 5, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-381
Lower Tribunal No. 14-23649
_____

**Jose and Vanessa Arrasola,**
Appellants,

vs.

**MGP Motor Holdings, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Andrew J. Bernhard, for appellants.

Kurkin Brandes and Craig H. Blinderman and Marc E. Brandes (Aventura), for appellee.

Before SALTER, LOGUE and SCALES, JJ.

SALTER, J.

Jose and Vanessa Arrasola appeal a non-final order granting the motion of MGP Motor Holdings, LLC (doing business and identified here as "Kendall Mitsubishi"), defendant below, to compel arbitration. We affirm.

I.    Facts and Procedural Background

In June 2014, the Arrasolas visited Kendall Mitsubishi and negotiated the purchase of a vehicle. The purchase terms required a down-payment of $1,500.00, paid by a check post-dated for 45 days later, financing through Mitsubishi, and the trade-in of their prior vehicle. Later that month, the Arrasolas returned to the dealership to sign various documents. One of these documents was a "Retail Buyer's Order" or "RBO." Both of the Arrasolas signed it. The Arrasolas also provided Kendall Mitsubishi with a federal income tax Form 1099 evidencing contractual payments to the Arrasola family business by its largest customer (Miami FC, the Fort Lauderdale Strikers). That document and other financial records were provided by the Arrasolas to the finance manager at Kendall Mitsubishi to facilitate applications for a car loan covering the Arrasolas' purchase.

Allegedly, the Kendall Mitsubishi finance manager, or others on the manager's behalf, prepared fraudulent W-2 forms reporting fictitious income by the Arrasolas, and submitted the fraudulent forms with auto loan applications. The Arrasolas claim that a financial institution telephoned Miami FC in early July 2014 to confirm the Arrasolas' income, alerting Miami FC to the alleged fraud. The

2

Arrasolas allege that Miami FC suspected that the fraudulent documents were submitted by the Arrasolas. The Arrasolas also learned that a number of auto lenders turned down the applications for a loan on the vehicle they sought to purchase, allegedly damaging their credit history.

On July 9, 2014, the Arrasolas returned the vehicle to Kendall Mitsubishi, notified Kendall Mitsubishi that they disputed any obligation to Kendall Mitsubishi or its affiliates, and described the problems that had followed the fraudulent loan applications. The following day, Kendall Mitsubishi's general sales manager issued a letter to the Arrasolas and "to whom it may concern" apologizing for what happened and confirming that the Arrasolas had not been involved in the fraud:

> Jose Arrasola and Vanessa Arrasola had nothing to do with what happen [sic] at Kendall Mitsubishi and they had no knowledge regarding said actions. These actions were done by the Finance Manager and the sales person, two individuals that took matters into their own hands with Kendall Mitsubishi having no knowledge regarding such decision. Finding out what had happen, Kendall Mitsubishi to action and terminated the said two individuals [sic].

According to their complaint, although the Arrasolas considered the transaction terminated at that point, they were contacted later by a "lending collections company . . . to advise that Kendall Mitsubishi had endorsed and transferred the $1,500 post-dated check to the company in return for a bridge loan during the 45-day post-dated waiting period, and that the Arrasola Family owed the lending/collections company $1,500 plus interest."

3

In September 2014, the Arrasolas filed a six count complaint against Kendall Mitsubishi, seeking damages for fraud, tortious interference with their advantageous business relationship with Miami FC, defamation, violations of the Florida Deceptive and Unfair Trade Practices Act, violations of the Florida Consumer Collections Practices Act, and negligent misrepresentation, as well as an award of attorney's fees and costs. The complaint did not seek rescission of the RBO or otherwise refer to the execution or existence of the RBO.

Kendall Mitsubishi moved to compel arbitration, and the trial court granted that motion. This appeal followed.

II.    Analysis

The RBO signed by the Arrasolas included extensive provisions relating to arbitration. A paragraph on the front of the document, directly above their signatures, stated:

ARBITRATION AND LIMITATION ACKNOWLEDGEMENTS

The parties agree to submit to binding arbitration as set forth in paragraph H on the reverse side. Customer has read and understands paragraph H. In a dispute between the parties, Customer shall not be entitled to recover from Dealer any special damages, consequential damages, damages to property, damages for loss of use, loss of time, loss of profits or income, or any other incidental damages, including, but not limited to vehicle rental charges. This Order is not evidence of any cash payment. Cash payments are evidenced by a separate receipt document. The Deposit will serve to hold the Vehicle from sale to another for 24 hours from this date.

4

The reverse side of the document contained a full page of "Terms and Conditions," including more extensive provisions regarding arbitration:

H. Dealer and Customer agree that any controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained), including, but not limited to any matter that may have induced the Customer to enter into a relationship with Dealer (collectively referred to as "Claim"), as well as the validity of this provision, shall be submitted to final and binding arbitration in the county and state where Dealer is situated.

1. The Parties agree that any Claim shall be arbitrated by a single arbitrator on an individual basis and not as a class action. Customer expressly waives any right it may have to arbitrate a class action. Customer may choose the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that the parties may choose subject to mutual approval. If the parties cannot agree, the Dealer shall choose. Customer can obtain a copy of the rules of these organizations by contacting the arbitration organization or visiting the website.

2. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The Arbitrator shall apply governing substantive law in making an award. The arbitrator's award shall be final and binding on all parties.

3. Dealer shall advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.

4. The prevailing party shall be entitled to recover all Arbitration fees described in paragraph 3 above, as costs to the extent paid and/or due and owing from such party, and shall be entitled to enforce the award in a circuit court of competent jurisdiction.

5. This arbitration requirement shall not apply to: (a) any action by Dealer for repossession of the Vehicle (but it does apply to any counter-claim thereto except as otherwise provided in this paragraph); or (b) any action within the jurisdiction of the small claims court as set forth in Florida Rule of Court 7.010(b).

CUSTOMER UNDERSTANDS AND AGREES: (1) THAT IF A DISPUTE IS ARBITRATED, CUSTOMER WILL GIVE UP THE RIGHT TO A TRIAL BY A COURT; (2) THAT IF A DISPUTE IS ARBITRATED, CUSTOMER WILL GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS CLAIM AGAINST DEALER, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS; (3) DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT CUSTOMER AND DEALER WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION; (4) TO RESOLVE ALL DISPUTES WITH DEALER BY BINDING ARBITRATION RATHER THAN LITIGATION IN ANY COURT EXCEPT AS SPECIFICALLY SET FORTH ABOVE; AND (5) THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY, TO WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY FOR ANY CLAIM NOTWITHSTANDING THE ENFORCEABILITY OF THIS ARBITRATION PROVISION.

6. Within thirty (30) days of the arbitrator's appointment, the arbitrator shall establish the procedure for the exchange of information bearing in mind the expedited nature of arbitration. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of cost.

7. Both parties retain any rights to self-help remedies, such as repossession. Neither party waives the right to arbitrate by using self-

6

help remedies or filing suit. Any court having jurisdiction may enter judgement on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this contract.

8. This Agreement is subject to the Federal Arbitration Act, 9 U.S.C.A. § 1, *et. seq.* To the extent that any part of this provision is ruled illegal or unenforceable by any finder of fact or law, so much hereof as is ruled illegal or unenforceable shall be deemed severed and the remaining provisions shall survive.

The arbitration-related provisions on both sides of the RBO were in a small font but were legible. In opposition to Kendall Mitsubishi's motion to compel arbitration, and in seeking a reversal in the present appeal, the Arrasolas assert that: (a) the parties mutually abandoned or terminated the RBO, such that no valid or enforceable contract to arbitrate exists; (b) the arbitration provisions in the RBO are procedurally and substantively unconscionable, and should not be enforced; and (c) the trial court erred in denying the Arrasolas an evidentiary hearing on contract formation, abandonment, validity, and unconscionability. The parties acknowledge that the standard of review applicable to an order compelling arbitration is de novo. Murphy v. Courtesy Ford, L.L.C., 944 So. 2d 1131, 1133-34 (Fla. 3d DCA 2007).

A.    Abandonment

The arbitration provisions within the RBO are presumptively enforceable under the three prerequisities set forth in Seifert v. U.S. Home Corp., 750 So. 2d 633 (Fla. 1999). First, there is a valid written agreement to arbitrate. Second, the claims in the complaint fall within the sweeping definition set forth in paragraph H

of the RBO, i.e., a "controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint arising out of, or relating to [the RBO] or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained), including, but not limited to any matter that may have induced the Customer to enter into a relationship with Dealer (collectively referred to as 'Claim'), as well as the validity of this provision." Third, Kendall Mitsubishi did not waive its right to arbitration merely by accepting the return of the vehicle or issuing a letter of apology.

Florida's statutes relating to arbitration include a "gatekeeper" provision allocating arbitrability issues between court and arbitrator:

> (1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

> (2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

> (3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.

§ 682.02, Fla. Stat. (2014).

In the present case, the Arrasolas do not dispute that they signed the RBO, or that the RBO contains a provision to arbitrate. They challenge the continued effectiveness and validity of the entire RBO and do not maintain that they were

8

fraudulently induced to enter into the arbitration provisions alone. Here as in Depaoli v. Exotic Motorcars & Jewelry, Inc., 2008 WL 4279645 (S.D. Fla. 2008), the state law claim of invalidity or termination of the agreement as a whole must itself be considered in the first instance by the arbitrator rather than the court. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-45 (2006) (holding that whether in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator and not the court).

### B. Unconscionability

The Arrasolas' claim of procedural and substantive unconscionability relies upon Basulto v. Hialeah Automotive, 141 So. 3d 1145 (Fla. 2014). That case is readily distinguishable, however, as it came to the appellate courts with an extensive record establishing that the automobile purchasers did not read or understand English; that the dealership had the purchasers "sign the contract in blank, with the representation that the agreed-upon numbers would be filled in;" and that when the contract was completed it allowed the purchasers "a lower trade-in allowance than the amount agreed upon." Id. at 1148-49. No such facts are present in the record before us here. Kendall Mitsubishi has acknowledged that claims of unconscionability, like the claims of abandonment or termination, may be presented to the arbitrator for determination.

C.   Evidentiary Hearing

The Revised Florida Arbitration Code authorizes the trial court "summarily to decide" a motion to compel arbitration "unless it finds that there is no enforceable agreement to arbitrate." § 682.03(1)(b), Fla. Stat. (2014). The word "decide" in the Code replaced the word "hear" in 2013, suggesting that an evidentiary hearing is unnecessary if the court has concluded that there is an agreement to arbitrate. See Fi-Evergreen Woods, LLC v. Robinson, 135 So. 3d 331, 335, n.4 (Fla. 5th DCA 2013). On this record, however, we need not reach the effect of that statutory amendment; there is no dispute that the RBO was knowingly executed and that it contained a mandatory arbitration provision.

III.   Conclusion

The issue on appeal is not whether the Arrasolas may litigate, rather than arbitrate, their substantive claims against Kendall Mitsubishi. The issue is whether there was an agreement to arbitrate the threshold determination of contract enforceability, termination, abandonment, rescission, or unconscionability. The trial court correctly determined that, in this case and in light of the RBO, the arbitrator should make that front-end assessment.

Affirmed.