[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2012
JOHN LEY
CLERK

No. 11-14282
Non-Argument Calendar

_____

D.C. Docket No. 1:09-md-02036-JLK


In Re: CHECKING ACCOUNT OVERDRAFT LITIGATION

     MDL NO. 2036

_____

MAXINE AARONS GIVEN,
Individually and on behalf of All
Others Similarly Situated,

                         Plaintiff - Appellee,

versus

M & T BANK CORPORATION, etc., et al.,

                         Defendant,

MANUFACTURERS AND TRADERS TRUST COMPANY,
a.k.a. M & T BANK,

                         Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 21, 2012)

Before CARNES, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Maxine Given filed a putative class action against Manufacturers and Traders Trust Company (M&T Bank), alleging that M&T Bank improperly charged its checking account customers overdraft fees. The district court denied M&T Bank's renewed motion to compel arbitration, finding that Given's claims are not within the scope of the parties' arbitration agreement. The bank appeals that denial, contending that the arbitration agreement explicitly assigns to an arbitrator the decision about whether Given's claims are within the scope of the arbitration agreement.

I.

M&T Bank provides debit cards or ATM cards to its checking account customers. When one of those customers makes a debit card purchase or an ATM withdrawal for an amount that exceeds the amount in the customer's checking account, the bank charges that customer an overdraft fee of $37.

2

Given, a Maryland resident, is one of M&T Bank's checking account customers. After she was charged overdraft fees of $370, she filed a putative class action against M&T Bank in Maryland federal district court, alleging that the bank had improperly "manipulate[d] and reorder[ed] debits and credits from highest to lowest" to increase the bank's revenue from overdraft fees. She seeks money damages and injunctive relief for violation of the Maryland Consumer Protection Act, conversion, and breach of the implied covenant of good faith and fair dealing. She also seeks relief under the theory of unjust enrichment, claiming she is entitled to restitution, and she claims that the court should order M&T Bank to return the overdraft fees under a theory of money had and received.

Given attached to her complaint her contract with M&T Bank that governs her checking account. That contract includes an arbitration agreement that obligates her to submit "[e]ach dispute or controversy that arises out of or is related to [her checking] account . . . [to] binding arbitration." The arbitration agreement also provides: "Any issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator. If any part of the relief request is not expressly stated as a dollar amount, the dispute or controversy will not be . . . subject to arbitration."

M&T Bank filed a motion to compel arbitration. The case was transferred

to the Southern District of Florida and consolidated with related cases for pretrial purposes. The district court denied M&T Bank's motion to compel arbitration, finding that the arbitration agreement is unconscionable under Maryland law, and M&T Bank appealed. After we heard oral argument, the Supreme Court decided AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S.Ct. 1740 (2011). We then vacated the district court's order denying the motion to compel arbitration and remanded the case for reconsideration in light of the Concepcion decision. In re Checking Account Overdraft Litig., 425 F. App'x 857, 857 (11th Cir. 2011) (unpublished).

Back in the district court, M&T Bank renewed its motion to compel arbitration. The court again denied the motion but did not reach the issue of whether the arbitration agreement is unconscionable. Instead, because Given sought, in part, injunctive relief, the court found that her claims are not within the scope of the arbitration agreement and therefore are not arbitrable. M&T Bank then filed this appeal.

II.

M&T Bank contends that the district court erred by deciding whether Given's claims are within the scope of the arbitration agreement, arguing that an arbitrator should have decided that question. We review de novo the district

4

court's denial of a motion to compel arbitration. Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011).

"[A]rbitration is a matter of contract," Rent-A-Center, W., Inc. v. Jackson, __ U.S. __, 130 S.Ct. 2772, 2776 (2010), so "the interpretation of an arbitration agreement is generally a matter of state law," Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., __ U.S. __, 130 S.Ct. 1758, 1773 (2010). The Federal Arbitration Act, however, "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, 130 S.Ct. at 2776 (citation omitted). M&T Bank and Given agree that the FAA and Maryland law govern the arbitration agreement at issue in this case.

### A.

The arbitration agreement provides that "[a]ny issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator." That provision is an agreement to arbitrate the "gateway" question of "whether [the arbitration agreement] covers a particular controversy." Rent-A-Center, 130 S.Ct. at 2777. The agreement to arbitrate that gateway question, which we will refer to as the "delegation provision," "is simply an additional, antecedent agreement" that "is severable from the remainder of the" arbitration agreement. Id. at 2777–78 (quotation marks omitted).

5

Under the FAA, a delegation provision is valid, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Rent-A-Center, 130 S.Ct. at 2778. Courts should enforce valid delegation provisions as long as there is "clear and unmistakable" evidence that the parties manifested their intent to arbitrate a gateway question. Rent-A-Center, 130 S.Ct. at 2777–78 & n.1 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995)).

The terms of the delegation provision in this case provide clear and unmistakable evidence that M&T Bank and Given manifested their intent to arbitrate whether Given's claims are within the scope of the arbitration agreement. As we have mentioned, the delegation provision provides: "Any issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator." Given's claims for relief are "a particular dispute or controversy," and whether her claims are within the scope of the arbitration agreement is an "issue regarding whether a particular dispute or controversy is subject to arbitration." Because the delegation provision encompasses any issue, it encompasses Given's claims for relief. See Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement could not have been broader. Any disputes means all disputes, because 'any' means all." (some

quotation marks omitted)).  An arbitrator, not the district court, must decide whether those claims are within the scope of the arbitration agreement.  See CompuCredit Corp. v. Greenwood, __ U.S. __, 132 S.Ct. 665, 669 (2012) ("[Section 2 of the FAA] requires courts to enforce agreements to arbitrate according to their terms."); Rent-A-Center, 130 S.Ct. at 2776.

Given makes two arguments against compelling arbitration of the gateway question.  Neither is persuasive.  First, she argues that the delegation provision is ambiguous because it is followed by this sentence:  "If any part of the relief request is not expressly stated as a dollar amount, the dispute or controversy will not be . . . subject to arbitration."  According to Given, that sentence not only excludes certain claims from the scope of the arbitration agreement but also removes from an arbitrator the decision about whether certain claims are within the scope of the arbitration agreement.  In effect, Given asks us to rewrite the beginning of the delegation provision from "Any issue" to "Any issue, except an issue involving whether the relief request is not expressly stated as a dollar amount" or to "Almost any issue."  That is something we cannot do.  See, e.g., Clancy v. King, 954 A.2d 1092, 1101 (Md. 2008) ("Effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be

sensibly and reasonably followed." (alteration and quotation marks omitted));

Calomiris v. Woods, 727 A.2d 358, 368 (Md. 1999) ("It is a fundamental principle of contract law that it is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." (quotation marks omitted)).

Second, Given argues that, because the arbitration agreement is procedurally unconscionable, there is not clear and unmistakable evidence that she and M&T Bank agreed to arbitrate the gateway question. A delegation provision is severable from the rest of the arbitration agreement and must be challenged "specifically." See Rent-A-Center, 130 S.Ct. at 2777–79 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate [contained within the challenged contract]." (quotation marks omitted)). Given did not challenge the delegation provision with her unconscionability argument before the district court, so we will not consider it on appeal. See Grigsby & Assocs., Inc. v. M Sec. Inv., 664 F.3d 1350, 1352 n.5 (11th Cir. 2011). In any event, her argument, which "is that it is not clear and unmistakable that [her] agreement to the text [of the delegation provision] was valid[] because of the unconscionability" of the arbitration agreement as a whole, "mistakes the subject of the . . . clear and

8

unmistakable requirement." See Rent-A-Center, 130 S.Ct. at 2777 n.1 (quotation marks omitted). That requirement "pertains to the parties' manifestation of intent, not to the agreement's validity." Id.

Under the delegation provision, therefore, the decision of whether Given's claims are within the scope of the arbitration agreement is a decision for an arbitrator, and the district court erred in making that decision itself.[1]

## B.

Given argues that we can affirm the district court's denial of the renewed motion to compel arbitration on the alternative ground that the arbitration agreement as a whole is unconscionable under Maryland law. When the district court denied M&T Bank's first motion to compel arbitration, it was without the benefit of the Supreme Court's decision in Concepcion. Believing it was prudent for the district court to reconsider its decision in light of Concepcion, we vacated the court's order and remanded for reconsideration. In re Checking Account Overdraft Litig., 425 F. App'x at 857. We still believe it is prudent for the district court to reconsider its unconscionability determination in light of Concepcion, so

---

[1]In its order denying the renewed motion to compel arbitration, the district court suggested that M&T Bank waived its argument that an arbitrator must decide whether Given's claims are within the scope of the arbitration agreement. But, as Given concedes, M&T Bank did not waive that argument because the bank has raised it throughout the litigation.

9

at this time we will not reach whether the arbitration agreement is unconscionable. If the district court concludes that the arbitration agreement is not unconscionable, an arbitrator must decide whether Given's claims are within the scope of the arbitration agreement.

## III.

For the reasons we have discussed, we vacate the district court's denial of M&T Bank's renewed motion to compel arbitration and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED.**