[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-11900

_____

CLAIRE LAMBERT,

Plaintiff-Appellee,

*versus*

SIGNATURE HEALTHCARE, LLC,

LP MANAGER, LLC,

LPMM, INC.,

STAKEHOLDER PAYROLL SERVICES, LLC,

f.k.a. Signature Payroll Services, LLC,

LP LAKE WORTH, LLC,

SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC,

d.b.a. Signature HealthCARE of Palm Beach, LLC,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81439-DMM

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

This case requires us to decide whether an arbitration agreement was unconscionable under Florida law. Claire Lambert was unemployed and had been searching for a job for approximately six months before she accepted a position at Signature Healthcare, LLC ("Signature"). As a condition of her employment with Signature, Lambert signed an arbitration agreement. She also signed an acknowledgment that she had received Signature's employee handbook. After Signature fired Lambert, she sued Signature. Signature moved to dismiss and compel arbitration, but the district court denied the motion because it determined that the arbitration agreement was unconscionable and, therefore, unenforceable. The district court reasoned that the arbitration agreement was procedurally unconscionable because Lambert lacked a meaningful choice when she signed the agreement and substantively unconscionable because the handbook acknowledgment form reserved to Signature the right to unilaterally modify the terms of the arbitration agreement. After careful consideration of Florida law

and with the benefit of oral argument, we conclude that the arbitration agreement was not unconscionable, and thus is enforceable. Accordingly, we reverse.

## I.    BACKGROUND

In June 2012, Lambert was 57 years old and had been unemployed for approximately six months. During that time, she had applied to at least two jobs each week without success. Lambert believed that if she did not find a job, she would have to retire early to cover her expenses. And if she retired early, she would incur financial penalties on her retirement accounts.

Signature, a healthcare provider for nursing homes and assisted living communities, contacted Lambert about applying to be an activities director for a senior assisted living community. Lambert applied and was hired. As a condition of employment, Lambert was required to sign Signature's arbitration agreement ("Arbitration Agreement"). She was also required to sign Signature's "Stakeholder Handbook Acknowledgment" ("Handbook Acknowledgment"), which stated that she had received and would familiarize herself with Signature's "Employee Handbook" ("Handbook"). Lambert signed both documents. According to Lambert, she "felt pressured to sign all of the documents in the stack of papers because of [her] financial situation and unsuccessful job search even though [she] did not understand them."

The Arbitration Agreement provided that:

> All claims relating to your recruitment, employment with, or termination of employment from [Signature] shall be deemed waived unless submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA") or, if a court determines the FAA does not apply, by any applicable state arbitration act, in accordance with the rules of the American Health Lawyers Association ("AHLA"). . . . If AHLA ceases providing dispute resolution services, the arbitration proceeding shall be governed by the rules of the American Arbitration Association. The arbitrator and not a court shall decide whether a dispute is arbitrable, including all claims that fraud or misrepresentation induced the employee to sign this Agreement.

The Arbitration Agreement explicitly covered claims relating to "recruitment, employment, or termination of employment"; claims arising under the Americans with Disabilities Act and the Fair Labor Standards Act; and "any and all claims under federal, state, and local laws and common law." And the Arbitration Agreement contained a severability clause: "In the event any portion of this Agreement shall be determined by a court to be invalid, the remainder of this Agreement shall remain in full force and effect, and this provision shall survive such determination." Finally, the Arbitration Agreement advised that:

> YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. IF SO, TAKE A COPY OF THIS FORM WITH YOU. HOWEVER, YOU WILL NOT BE OFFERED EMPLOYMENT UNTIL THIS FORM IS SIGNED AND RETURNED BY YOU.

> PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

> BOTH PARTIES WAIVE TRIAL BY JURY.

The Handbook Acknowledgment that Lambert signed stated:

> I understand that this Stakeholder Handbook is not intended to, nor does it constitute a contract of employment or a promise or guarantee of benefits or policies stated in it.

> I also understand that this Stakeholder Handbook is only a brief summary of the policies and procedures of this company and an overview of the rules and practices.

> ★     ★     ★

> I further understand that the company may, on its own, change or discontinue any policy in the stakeholder handbook or other writing, without having to consult anyone and without anyone's agreement and at any time.

The Handbook—a separate document from the Handbook Acknowledgment—contained Signature's written policies and procedures. Relevant here, the Handbook contained a "Conflict Resolution" policy. Under that policy, the Handbook "encourage[d] [employees] to discuss work related problems or issues with Supervisors at any time." It also explained that employees "have the right to present a complaint[.]" But "[i]f the conflict is not resolved, or if the [employee] is not comfortable approaching the individual(s) involved, then the [employee] should follow the complaint procedure below." That "complaint procedure" was arbitration.

The Handbook then summarized the basic terms of the Arbitration Agreement:

> All disputes between [employees] and the company or its management, which are not resolved through the Conflict Resolution procedure, must be submitted to binding arbitration. This means that claims of any kind concerning your employment with the Company will be decided by a neutral third[]party, and not in a court of law. The third party's decision will be final and [an employee] may not file a lawsuit or pursue any administrative remedies unless otherwise permitted by law. As a condition of employment, applicants and [employees] must sign an Arbitration Agreement.
>
> Signed acknowledgment of receipt of the Stakeholder Handbook shall serve as acceptance and

19-11900              Opinion of the Court                    7

>understanding of this condition of employment,
>thereby binding [employees] to the Arbitration
>Agreement.

Lambert was ultimately fired by Signature.

After Lambert was fired, she sued Signature in Florida state court, bringing claims under the Family and Medical Leave Act, the Fair Labor Standards Act, and state law.[1]  Signature removed the case to federal court based on federal question jurisdiction and moved to dismiss and compel arbitration under the Federal Arbitration Act ("FAA"), arguing that the Arbitration Agreement was valid and covered Lambert's claims.[2]  Lambert opposed the motion to dismiss and compel arbitration.  She argued that the Arbitration Agreement was unenforceable because there was no meeting of the minds and the Arbitration Agreement lacked consideration.  Relevant here, concerning the lack of consideration,

---

[1] Lambert also sued LP Manager, LLC; LPMM, Inc.; Signature Payroll, LP; Lake Worth, LLC; and Signature Healthcare Consulting Services, LLC.

[2] The Federal Arbitration Act provides that:

>A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Lambert argued that the Arbitration Agreement lacked mutuality of obligation because the three documents that she signed gave Signature the unilateral ability to modify the terms of the Arbitration Agreement. Thus, Lambert argued that the Arbitration Agreement was unconscionable. After Lambert amended her complaint to add a claim under the Americans with Disabilities Act, Signature renewed its motion to dismiss the amended complaint and compel arbitration.

The parties then filed a joint discovery plan. Signature moved to stay discovery on the merits to avoid potentially waiving its right to arbitration. Signature maintained that any discovery the district court permitted should "be limited to the issue of enforceability of the arbitration issue." Signature then asked Lambert's counsel "to advise as to what discovery Plaintiff felt would be necessary that is directed and relevant to the pending arbitration issue." Lambert's counsel did not answer Signature's motion to stay discovery, but instead moved to compel discovery on the merits of the case. Lambert then filed an opposition to Signature's renewed motion to dismiss and compel arbitration and incorporated her previous arguments.

The district court denied Signature's motion to dismiss and compel arbitration.[3] It denied the motion because it identified a "threshold issue" of "whether a valid written agreement to

---

[3] The district court simultaneously dismissed as moot Signature's motion to stay discovery.

arbitrate was ever formed." The district court found that no valid written agreement to arbitrate was ever formed because the Arbitration Agreement was unconscionable, both procedurally and substantively.[4]

First, the district court determined that the Arbitration Agreement was procedurally unconscionable because it was a "contract of adhesion." The district court reasoned that the Arbitration Agreement was a condition of employment and presented on a "take it or leave it" basis. And given Lambert's financial situation, she "did not have a meaningful option" to refuse to sign it.

Second, the district court found that the Arbitration Agreement was substantively unconscionable. The district court focused on the Handbook Acknowledgment's language that Signature "may, on its own, change or discontinue any policy in the stakeholder handbook or other writing, without having to consult anyone and without anyone's agreement and at any time." It concluded that the Arbitration Agreement and the Handbook Acknowledgment should be read together because they were "part of the same transaction—the formation of the employer-employee

---

[4] The district court noted that, because it "found that the Arbitration Agreement is unenforceable for unconscionability," it did not need to address Plaintiff's other arguments about its alleged invalidity—no meeting of the minds, lack of consideration, and contrary to public policy. However, "having considered Plaintiff's additional arguments," the court found "that they are without merit."

relationship" and because the Handbook explicitly referenced the Arbitration Agreement. Reading the documents together, the district court concluded that the parties lacked mutuality of obligation because Lambert was bound by the terms of the Agreement, while the Handbook Acknowledgment allowed Signature "to modify [the Agreement's] terms at its pleasure."

Having concluded that both elements of unconscionability were met, the district court held that the Arbitration Agreement was unenforceable under Florida law. Signature timely appealed.

## II. STANDARD OF REVIEW

We review the denial of a motion to dismiss and compel arbitration *de novo*. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018).

## III. DISCUSSION

Signature argues that the district court erred when it determined that the Arbitration Agreement was both procedurally and substantively unconscionable and, therefore, unenforceable.[5]

---

[5] We note that Signature also argues on appeal that the "delegation" clause in the Arbitration Agreement requires that an arbitrator decide whether the arbitration agreement is unconscionable. In the proceedings below, however, Signature did not invoke the delegation clause, electing instead to challenge Lambert's unconscionability argument on its merits. Only now, after an adverse decision in the district court, does Signature suggest that an arbitrator must decide the unconscionability issue. Accordingly, we find that Signature forfeited the delegation issue. *See, e.g.*, *Johnson v. Keybank Nat'l Ass'n*, 754

For the reasons that follow, we agree with Signature that the Arbitration Agreement is not unconscionable. Accordingly, we reverse the district court's order denying Signature's motion to dismiss and to compel arbitration.

The Arbitration Agreement provided that "[a]ll claims relating to [Lambert's] recruitment, employment with, or termination of employment from [Signature] shall be deemed waived unless submitted to final and binding arbitration in accordance with the [FAA]." *See Given v. M&T Bank Corp.*, 674 F.3d 1252, 1255 (11th Cir. 2012) ("The Federal Arbitration Act . . . 'places arbitration agreements on an equal footing with other contracts[] and requires courts to enforce them according to their terms.'" (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). And under the FAA, "a written agreement to arbitrate is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. § 2). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Dale v. Comcast Corp.*, 498

F.3d 1290, 1298 (11th Cir. 2014) (holding that defendant "waived its delegation clause argument when it waited to raise the issue until after it had asked the district court to decide arbitrability"). Signature has similarly forfeited its argument on severability by failing to raise it below.

F.3d 1216, 1219 (11th Cir. 2007) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Thus, the FAA "requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert*, 544 F.3d at 1195 (quotation omitted); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) ("Before enforcing an arbitration agreement, the court should ensure that the agreement was formed and that it applies to the dispute at hand," and "should also determine whether" there are any grounds "that invalidate the arbitration agreement or permit it to be declared unenforceable" (quotations omitted and alterations adopted)).

Under Florida law, "[a]rbitration is a matter of contract, and agreements to arbitrate are thus subject to state law defenses to the enforcement of contracts." *Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 838 (Fla. 2d Dist. Ct. App. 2016). Unconscionability is one such defense. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1158–59 (Fla. 2014).  To assert the defense of unconscionability, the party challenging an agreement "must establish that the arbitration agreement is both procedurally and substantively unconscionable." *Id.* at 1158.  Florida courts apply a "balancing" or "sliding scale" approach, which requires that both aspects "be evaluated interdependently rather than as independent elements." *Id.* at 1161.  "[B]oth the procedural and substantive

aspects of unconscionability must be present, although not necessarily to the same degree[.]" *Id.* Thus, "one prong [may] outweigh another provided that there is at least a modicum of the weaker prong." *Id.* at 1159 (quoting *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 39 (Fla. 4th Dist. Ct. App. 2005)). And "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Romano ex rel. Romano v. Manor Care, Inc.*, 861 So. 2d 59, 62 (Fla. 4th Dist. Ct. App. 2003)).

Florida courts apply the doctrine of unconscionability "with great caution[.]" *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st Dist. Ct. App. 2003). They have warned that the doctrine is not a mechanism that allows a party to "avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous." *Id.* at 288; *Spring Lake NC, LLC v. Beloff*, 110 So. 3d 52, 55 (Fla. 2d Dist. Ct. App. 2013) (same); *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. 3d Dist. Ct. App. 2006) (same). An "unreasonable" contract, or a contract "which may lead to hardship on one side[,]" is not unconscionable. *Gainesville Health Care*, 857 So. 2d at 284 (quoting *Steinhardt v. Rudolph*, 422 So. 2d 884, 890 (Fla. 3d Dist. Ct. App. 1982)). A contract is unconscionable only when "it turns out that one side . . . is to be penalized by the enforcement of the terms of a contract

so unconscionable that no decent, fair[-]minded person would view the ensuing result without being possessed of a profound sense of injustice[.]" *Steinhardt*, 422 So. 2d at 890 (quotation omitted).

With this general framework in mind, we turn first to the issue of procedural unconscionability.

The district court concluded that the Arbitration Agreement was procedurally unconscionable because Lambert lacked a meaningful choice when she signed the Arbitration Agreement. It reasoned that the Arbitration Agreement was presented on a take-it-or-leave-it basis as a condition of employment and that Lambert lacked alternative employment options. Because the district court misapprehended procedural unconscionability under Florida law, we reverse.

"The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st Dist. Ct. App. 1999). "The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract." *Basulto*, 141 So. 3d at 1157 n.3.

In determining whether a party lacked a meaningful choice, Florida courts look to "the totality of the circumstances." *Fla.*

*Holdings*, 198 So. 3d at 839.  That analysis considers such factors as:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275 (Fla. 5th Dist. Ct. App. 2020) (quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010)).

The fact that an arbitration agreement is presented on a take-it-or-leave-it basis (a contract of adhesion) "is not dispositive." *Id.*; *see also Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 110–11 (Fla. 3d Dist. Ct. App. 2017) (same); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Florida courts define a contract of adhesion as a "[s]tandardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and *under such conditions that the consumer cannot obtain [the] desired product or services except by acquiescing in [the] form contract.*"  *See Powertel*, 743 So. 2d at 574 (alterations accepted) (emphasis added) (quoting Black's Law Dictionary (6th ed. 1990)).  Thus, Florida

courts have made it clear that two of the relevant factors that Florida courts have identified in determining procedural unconscionability—the relative bargaining power and the take-it-or-leave-it nature of an arbitration agreement—are not dispositive without more.

Nevertheless, even when an arbitration agreement is a condition of employment or obtaining goods or services, "courts should explore the circumstances surrounding the execution of an arbitration agreement before concluding it is procedurally unconscionable." *Hobby Lobby Stores*, 287 So. 3d at 1276. In such circumstances, Florida courts focus on the other two factors: the manner in which the contract was entered into and the complaining party's ability and opportunity to understand the disputed terms of the contract. Typically, that inquiry concerns: (1) a plaintiff's ability to understand an arbitration agreement; (2) a defendant's efforts to pressure a plaintiff or discourage a plaintiff from asking questions; and (3) the presentation of the agreement and the size of the print. *See, e.g.*, *Hobby Lobby Stores*, 287 So. 3d at 1276 (an arbitration agreement was not procedurally unconscionable because the employee made "no allegation that he lacked a full and fair opportunity to inquire into the Agreement's terms or to enlist help if confused" and the "operative terms [were] not hidden, minimized, or buried in fine print"); *Kendall Imports*, 215 So. 3d at 110 (an arbitration agreement was not procedurally unconscionable when a dealership failed to explain the agreement in Spanish); *Murphy*, 944 So. 2d at 1135 (an arbitration agreement

was not procedurally unconscionable because a dealership did not "actively discourage[] or prevent[]" the plaintiff from understanding the agreement and the plaintiff "chose not to review the terms of her agreement"); *cf. Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 991 (Fla. 4th Dist. Ct. App. 2004) (an arbitration clause was procedurally unconscionable because it was located on the back of a purchase agreement in fine print).

Here, the district court reasoned that the Arbitration Agreement was procedurally unconscionable because it was presented to Lambert on a take-it-or-leave-it basis as a condition of employment. To support its conclusion, the district court cited a single Florida case, *Powertel*, 743 So. 2d 570, to establish the definition of a contract of adhesion. However, the district court neglected to mention that *Powertel* explained that a contract of adhesion is not dispositive in the procedural unconscionability analysis. *See id.* at 574 ("Although not dispositive of [the procedural unconscionability analysis], it is significant that the arbitration clause is an adhesion contract."). As we have explained, the fact that a contract is presented on a take-it-or-leave-it basis is insufficient by itself to show procedural unconscionability under Florida law. *See Hobby Lobby Stores*, 287 So. 3d at 1275 ("In Florida, . . . the take-it-or-leave-it nature of arbitration agreements is not dispositive."); *Kendall Imports*, 215 So. 3d at 110–11 (same). That fact is only the beginning of the analysis. We must then "explore the circumstances surrounding the execution of an

arbitration agreement before concluding it is procedurally unconscionable." *Hobby Lobby Stores*, 287 So. 3d at 1276.

Next, the district court reasoned that the Arbitration Agreement was procedurally unconscionable because Lambert lacked alternative employment options and, therefore, had no meaningful choice to refuse to sign the Arbitration Agreement.[6] But as we have just explained, a lack of alternatives is an essential part of a contract of adhesion which, by itself, cannot establish procedural unconscionability under Florida law. *See Powertel*, 743 So. 2d at 574. Lambert must show something more.

Following our independent review of the record, we cannot identify any additional factors that weigh in favor of procedural unconscionability. Lambert's declaration stated that "[n]o one explained to [her] the meaning of the terms and conditions in the documents [she] was required to sign," and that she was "confused and unsure of the meaning of the terms and conditions" in those documents. But the record establishes that Lambert had the

---

[6] We note that Florida courts have not required plaintiffs to show that they lacked alternative employment options when an arbitration agreement was presented as a condition of employment. That said, the lack of alternative employment options may be a relevant factor when considering "the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into[.]" *Hobby Lobby Stores*, 287 So. 3d at 1275 (quotation omitted). Moreover, inquiring into whether a plaintiff had alternative employment opportunities is consistent with our duty under Florida law to evaluate the "the totality of the circumstances." *Fla. Holdings*, 198 So. 3d at 839.

opportunity to ask questions about the arbitration agreement and consult with an attorney before signing the arbitration agreement,[7] and she elected not to do so.  Thus, her statements that she did not understand that agreement's terms are insufficient under the circumstances to show procedural unconscionability.  *See, e.g.*, *Hobby Lobby Stores*, 287 So. 3d at 1276 (an arbitration agreement was not procedurally unconscionable because the employee made "no allegation that he lacked a full and fair opportunity to inquire into the Agreement's terms or to enlist help if confused"); *Gainesville Health Care*, 857 So. 2d at 287 (finding that although the plaintiff "did not understand the arbitration provision" she had "ample opportunity" to examine the document and consult with advisors or a lawyer); *cf. Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 633–34 (Fla. 2d Dist. Ct. App. 2008) (holding that an arbitration agreement was procedurally unconscionable when the plaintiff was not given a copy of the agreement or an opportunity to read the agreement and "was merely directed where to sign").

Lambert's declaration also stated that she "felt pressured to sign all of the documents in the stack of papers because of [her] financial situation and unsuccessful job search even though [she]

---

[7] The Arbitration Agreement advised Lambert that she "may wish to consult an attorney prior to signing this Agreement."  It further advised that by signing the Arbitration Agreement, Lambert was "attesting that [she had] read and understood this document and [was] knowingly and voluntarily agreeing to its terms."

did not understand them." However, Lambert provided "no evidence indicating that [Signature] actively discouraged or prevented [her] from knowing and understanding the disputed contract terms." *Murphy*, 944 So. 2d at 1135. And "pressure" that is "self-imposed" does not weigh in favor of procedural unconscionability. *Spring Lake*, 110 So. 3d at 55. Finally, the Arbitration Agreement was not hidden among other documents or presented in fine print. *See Palm Beach Motor Cars*, 885 So. 2d at 991. The one-page Arbitration Agreement was presented in the same font size as other documents such as the Handbook Acknowledgment.

For these reasons, we decline to hold that under Florida law an individual who was seeking employment for six months, applied to approximately two jobs per week during that period, and faced the difficult potential choice to retire early and incur penalties on retirement savings lacked a meaningful choice when she signed an arbitration agreement as a condition of employment. Florida courts recognize that contracts of adhesion are ubiquitous, and nothing in their decisions forecasts that some difficulty in securing employment combined with the signing of an arbitration agreement as a condition of employment renders that agreement procedurally unconscionable. To the contrary, Florida courts warn us to proceed "with great caution" when applying the doctrine of unconscionability. *Gainesville Health Care*, 857 So. 2d at 284. We are attentive to that warning especially when, as is the case here, there are scant details about the nature of Lambert's job search and

her future employment prospects. We cannot say that Lambert lacked a meaningful choice when she applied to two jobs per week and could draw on her retirement funds during her job search. To be sure, drawing on those funds would be a difficult personal choice. But that choice remained available to her. Thus, Lambert has not shown that the arbitration agreement was procedurally unconscionable. And because Lambert's unconscionability challenge thus fails, we need not consider whether the arbitration agreement was substantively unconscionable. *See Basulto*, 141 So. 3d at 1158–59.

*    *    *

Lambert has not met her burden to show that the Arbitration Agreement is unconscionable. Thus, the Arbitration Agreement is enforceable, and she may not "avoid the consequences of a contract freely entered into . . . because in retrospect, the bargain turns out to be disadvantageous." *Murphy*, 944 So. 2d at 1134 (quotation omitted).

## IV.    CONCLUSION

For these reasons, we reverse the district court's denial of Signature's motion to dismiss and to compel arbitration.

**REVERSED.**